UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN CARROLL,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | No.  1:23-cv-00158 TLN CKD<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Disability Income Benefits ("DIB") under Title II of the Social Security Act ("Act").  For the reasons discussed below, the court will recommend that plaintiff's motion for summary judgment be granted and the Commissioner's cross-motion for summary judgment be denied.

BACKGROUND

Plaintiff, born in 1960, applied on August 20, 2020 for DIB, alleging disability beginning April 13, 2018.  Administrative Transcript ("AT") 58.  Plaintiff alleged she was unable to work due to anxiety, social anxiety, depression, dizziness, back pain, prolapsed bladder, high blood pressure, high cholesterol, and a thyroid condition.  AT 59.  In a decision dated December 21,

2021, the ALJ determined that plaintiff was not disabled.[1]  AT 24-34.  The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2023.
>
> 2. The claimant has not engaged in substantial gainful activity since April 13, 2018, the alleged onset date.
>
> 3. The claimant has the following severe impairments: hammertoes of both feet, right ankle and foot osteoarthritis (OA), cervical and thoracic degenerative disc disease (DDD), and lumbar degenerative scoliosis.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1]  Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq.  Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq.  Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.  See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
>
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
>
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
>
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
>
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work except stand/walk/sit six of eight hours. The claimant is frequently able to climb stairs/ramps, stoop, crouch, reach overhead bilaterally, or push/pull. The claimant is unable to climb ladders/ropes/scaffolds, or to be exposed to unprotected heights and dangerous moving machinery.

6. The claimant is capable of performing past relevant work as a filter assembler with DOT #739.687-026 and an SVP of 2 (light exertional level). This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from April 13, 2018 through the date of this decision.

AT 26-34.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred in evaluating the medical opinion of the consultative psychologist; and (2) the ALJ erred in determining plaintiff could perform her past relevant work as a filter assembler.

LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

ANALYSIS

   A.  Medical Opinion

The ALJ found plaintiff to have no severe mental impairments, and did not include any mental limitations in the RFC. AT 27, 29. On December 28, 2020, plaintiff was evaluated by consultative psychologist Dr. G. E. Washington, who diagnosed her with general anxiety disorder with secondary depression, and avoidant personality disorder. AT 548-552. Dr. Washington opined that plaintiff was moderately limited in the ability to perform several job-related mental functions. AT 551. The ALJ found Dr. Washington's opinions "only somewhat persuasive because they are somewhat consistent with the medical evidence." AT 33. Plaintiff asserts that the ALJ's analysis of the opinion was so vague that it is impossible to tell whether she adopted the opined mental limitations set forth by Dr. Washington, and if she did not adopt them, why not.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must articulate a "substantive basis" for rejecting a medical opinion or crediting one medical opinion over another. Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014); see also Marsh v. Colvin, 792 F.3d 1170, 1172-73 (9th Cir. 2015) ("an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them").

For disability applications filed on or after March 27, 2017, the Commissioner revised the rules for the evaluation of medical evidence at the administrative level. See Revisions to Rules

Regarding the Evaluation of Medical Evidence, 82 Fed. Reg 5844-01 (Jan. 18, 2017). Because plaintiff filed her application in 2020, it is subject to the new rules for the evaluation of medical evidence.

The revised rules provide that adjudicators for the Social Security Administration, including ALJs, evaluate medical opinions according to the following factors: supportability; consistency; relationship with the claimant; specialization; and other factors such as the medical source's familiarity with other evidence in the record or with disability program requirements. 20 C.F.R. § 416.920c(c)(1)-(5). The most important of these factors are supportability and consistency. 20 C.F.R. § 416.920c(b)(2). Supportability is the extent to which an opinion or finding is supported by relevant objective medical evidence and the medical source's supporting explanations. 20 C.F.R. § 416.920c(c)(1). Consistency is the extent to which an opinion or finding is consistent with evidence from other medical sources and non-medical sources, including the claimants themselves. 20 C.F.R. §§ 416.920c(c)(2), 416.902(j)(1). The ALJ will articulate how he considered the most important factors of supportability and consistency, but an explanation for the remaining factors is not required except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 416.920c(b). The new regulations "still require that the ALJ provide a coherent explanation of his reasoning" and establish "a minimum level of articulation to be provided in determinations and decisions, in order to provide sufficient rationale for a reviewing adjudicator or court." Sam-Chankhiao v. Kijakazi, 2:20-cv-0186 DB, 2022 WL 4226170, at *3 (E.D. Cal. Sept. 13, 2022), citing Hardy v. Commissioner, 554 F.Supp.3d 900, 906 (E.D. Mich. 2021).

The ALJ evaluated Dr. Washington's opinion as follows:

> I find Dr. Washington's opinions are somewhat persuasive since they are somewhat supported by his exam findings. The claimant exhibited an ability to understand all test questions, intact orientation, intact comprehension, average verbal responses, fairly productive speech, average intelligence, fair memory, fair attention and concentration, intact recall, an adequate fund of knowledge, and adequate insight and judgment. It was noted the claimant was able to dress and bathe herself, perform activities of daily living,

> drive, pay bills, and manage funds. [2] I also find Dr. Washington's opinions are <u>only somewhat persuasive</u> because they are somewhat consistent with the medical evidence. Between February and September of 2021, exams of the claimant at Golden Valley Health Centers reflect a normal mood, normal behavior, and normal thought content (e.g., see pages 7 and 17 of Exhibit 12F)[3].

AT 32-33 (emphasis added).

First, from the lack of mental limitations in the RFC, it is clear the ALJ rejected Dr. Washington's findings that plaintiff was moderately limited in the abilities to perform work activities consistently, complete a normal workday or workweek without interruption from a psychiatric condition, interact with coworkers and the public, maintain regular attendance, and deal with the usual stresses encountered in competitive work. See Woods v. Kijakazi, 32 F.4th 785, 794 n.4 (9th Cir. 2022) (court will look to whether "the ALJ's meaning . . . is clear from context").

Second, in the vaguely-worded section of the decision set forth above, the ALJ did not analyze factors of supportability and consistency in detail. Elsewhere in the decision, however, the ALJ discussed the evidence relating to plaintiff's mental limitations. The ALJ found plaintiff mildly limited in four areas of functioning, including interacting with others, concentrating and maintaining pace, and adapting or managing oneself. AT 27-28. In support of these conclusions, the ALJ cited three sources, including a November 2020 adult function report in which plaintiff

> noted she was able to drive, shop in stores for groceries, pay bills, manage funds, count change, read and follow instructions . . . sweep, do laundry, wash dishes, clean mirrors . . . watch television, read, pay attention, mostly finish what she started, and follow instructions.

AT 27-28, citing AT 219-226. The ALJ also cited an October 2021 third-party report by plaintiff's sister-in-law, who stated that plaintiff "was able to live alone, maintain her own personal care, prepare simple foods, do laundry, shop for groceries in stores, manage funds, pay bills, count change, get along with others, and finish what she started." AT 27-28, citing AT 258-

---

[2] Citing AT 550.

[3] AT 824 (2021 exam note that plaintiff's mood, behavior, thought content, and affect were normal), 834 (same).

6

265. The ALJ further cited Dr. Washington's psychological exam findings, which were largely mild or normal. AT 27-28, citing AT 548-552. Based on such evidence, the ALJ found plaintiff's mental limitations non-severe. AT 28.

The ALJ also discussed the mental evidence with respect to the opinions of two agency physicians, who, like Dr. Washington, opined that plaintiff had severe mental impairments. AT 31-32, citing AT 58-78, 80-102. The ALJ found these doctors' mental assessments inconsistent with the medical record, once again citing plaintiff's largely normal consultative exam results in December 2020 and her ability to perform activities of daily living. AT 32.

Overall, the ALJ articulated why she rejected the opinions that plaintiff had severe mental impairments; there is no real mystery why she discounted these opinions nor as to the specific evidence on which she based her conclusion. Though her analysis of Dr. Washington's opinion could have been clearer, the ALJ sufficiently discussed its supportability and consistency, with reference to substantial evidence, and the undersigned finds no error on this basis. See Woods, 32 F.4th at 788 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld"), citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)).

B. Past Relevant Work

Plaintiff asserts that the ALJ relied on an erroneous finding by the vocational expert (VE) that plaintiff's past work required a "light" level of exertion. Plaintiff claims that the misclassification of her past work constituted material error, that plaintiff would be unable to perform her past job, which required "medium" exertion, and that the case should be remanded to re-classify her past relevant work. ECF No. 10 at 9.

At the November 8, 2021 hearing, the VE classified plaintiff's past relevant work as a filter assembler, a light unskilled job. AT 53. The Dictionary of Occupational Titles (DOT) describes this job as assembling "air, fuel, and oil filters for use on internal combustion engines" and other equipment, performing tasks such as folding and manipulating filter paper and working with the filter paper in the assembly machine. See DOT No. 739.687-026. Plaintiff asserts that, along with requiring filter assembler tasks, her past job included the duties of a warehouse

1 worker: packaging and stacking products on pallets, moving boxes and pallets, and lifting up to
2 50 pounds sometimes and 25 pounds frequently. ECF No. 10 at 8, citing AT 43, 213, 228-229.
3 Plaintiff argues that the VE improperly classified her past work according to its "least demanding
4 function."

        1. Waiver

6         Defendant argues that plaintiff waived this challenge to the ALJ's decision by failing to
7 raise it earlier, despite being represented by counsel. The Ninth Circuit has held that, unless
8 manifest injustice would result, claimants must generally "raise all issues and evidence at their
9 administrative hearings in order to preserve them on appeal," at least when claimants are
10 represented by counsel. Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999). This is because
11 the ALJ as the fact-finder, rather than a federal court reviewing under a substantial evidence
12 standard of review, is the appropriate person to resolve factual and evidentiary inconsistencies.
13 Indeed, at the administrative hearing, the vocational expert is subject to cross-examination by
14 plaintiff's representative.

15         However, the Ninth Circuit has clarified that "a counsel's failure does not relieve the ALJ
16 of his express duty to reconcile apparent conflicts through questioning: When there is an apparent
17 conflict between the vocational expert's testimony and the DOT—for example, expert testimony
18 that a claimant can perform an occupation involving DOT requirements that appear more than the
19 claimant can handle—the ALJ is required to reconcile the inconsistency." Lamear v. Berryhill,
20 865 F.3d 1201, 1206 (9th Cir. 2017). See Sahaj v. Commissioner, No. 2:16–cv–02563–CKD,
21 2018 WL 1502006, at *3 (E.D. Cal. March 27, 2018) ("Whether or not plaintiff's attorney
22 challenged these conflicts at the hearing, the ALJ was required to sufficiently develop the record
23 to address any deviation from the DOT. Therefore, plaintiff properly raises an issue that was
24 preserved for appeal.").

        2. Least Demanding Function

26         At step four of the sequential evaluation process, the ALJ must determine whether the
27 claimant's RFC allows her to return to her past relevant work. Lester v. Chater, 81 F.3d 821, 828
28 n.5 (9th Cir. 1995); see also 20 C.F.R. § 404.1520(a)(4)(iv). "[A] claimant has the burden to

prove that he cannot perform his past relevant work 'either as actually performed or as generally performed in the national economy.'" Stacy v. Colvin, 825 F.3d 563, 569 (9th Cir. 2016) (quoting Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002)).  If the claimant is able to perform past relevant work as actually or generally performed, the claimant is not disabled. Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001).

"When a job is a 'composite'—that is, it has significant elements of two or more occupations and therefore has no counterpart in the [Dictionary of Occupational Titles]—the ALJ considers only whether the claimant can perform the work as actually performed." Bade v. Colvin, 2016 WL 3033685, at *4 (D. Or. May 24, 2016) (citation omitted).  Composite jobs are evaluated "according to the particular facts of each individual case." SSR 82-61, 1982 WL 31387, at *2.  "In the Ninth Circuit, 'the least demanding aspect' of a claimant's past job is a task that a claimant performs 'less than half the time.'" Virgil C.H. v. Kijakazi, 2023 WL 8784955, at *6 (D. Alaska, Dec. 19, 2023), citing Stacy v. Colvin, 825 F.3d 563, 569-70 (9th Cir. 2016) (collecting cases).

An ALJ may not classify a composite job according to its "least demanding function" in order to conclude that a claimant can perform her past relevant work. Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985) (holding that the ALJ erred when he classified the claimant's past work as a "tomato sorter," which involved only light exertion, because the claimant was actually an agricultural worker who mostly performed medium exertion work); see also Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1166 (9th Cir. 2008) (holding that the ALJ erred when it categorized the claimant's work as "a purely supervisory position" when only twenty percent of his duties involved supervising employees and the remainder involved significant manual labor); Vertigan v. Halter, 260 F.3d 1044, 1051 (9th Cir. 2001) (concluding that the ALJ erred when he classified the claimant's past work as a cashier when she actually worked as a pharmacy clerk, and cashier was only "a small part of her job").  In other words, an ALJ may not classify a past occupation "based on [a task] the claimant did less than half the time, and ... [then] equat[e] that one task with a full time [past] job." Stacy, 825 F.3d at 569.

At the hearing, plaintiff testified that her past work was assembling and packaging filters

9

in a production line.  AT 43.  In a job history report, however, plaintiff stated that her job included building and stacking boxes and lifting heavy items.  AT 213.  In a separate work history report, she described carrying, lifting, bending, and moving pallets as part of her job.  AT 228-229.  Here, as in Virgil C.H., "it is unclear whether Plaintiff spent most of [her] time . . . performing the 'least demanding' functions of the job or whether [her] duties primarily involved more onerous duties as part of a composite job.  Consequently, the Court cannot determine if the ALJ categorized Plaintiff's past work . . . according to its least demanding function or if she correctly applied the 'generally performed' test."  2023 WL 8784955, *8.

Given the evidence that plaintiff had more physically demanding job duties than described in the DOT listing for filter assembler, the ALJ erred by not considering this and/or developing the record on this issue.  By not evaluating the "particular facts" of plaintiff's case, the ALJ "erred at step four of the sequential disability evaluation.  On remand, the ALJ should obtain detailed testimony from Plaintiff regarding [her] past relevant work, obtain testimony from a vocational expert, reevaluate Plaintiff's past relevant work, and determine whether Plaintiff can perform it."  See 2023 WL 8784955, *8.

Defendant contends that any such error was harmless, because the VE testified that plaintiff could perform past work requiring medium exertion.  AT 53.  However, plaintiff's RFC was for light work, and that portion of the VE's testimony does not appear to have figured into the ALJ's decision.  See 34 ("The [VE] testified that a person with the claimant's . . . current residual functional capacity, would be able to perform the claimant's past relevant work.").  Remand is necessary to determine what percentage of plaintiff's past job was at the "light" exertional level, and whether she could perform it during the alleged period of disability, based on the individual facts of plaintiff's case.  The ALJ may also determine, on remand, whether plaintiff could perform alternative jobs available in the national economy.

CONCLUSION

For the reasons stated herein, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 10) be granted;

2. The Commissioner's cross-motion for summary judgment (ECF No. 12) be denied;

     3. Judgment be entered for plaintiff; and

     4. This matter be remanded for further administrative proceedings consistent with this order.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, plaintiff may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: December 22, 2023

_/s/ Carolyn K. Delaney_
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/carroll158.dib.ckd.f&rs